**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**SHANNON CASEY SARGENT**                                                    **PLAINTIFF**

v.                                                                  No. 3:24-cv-00356-MPM-RP

**THE CITY OF HERNANDO, MISSISSIPPI,** *et al.*                      **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants', The City of Hernando, Mississippi, Hernando Police Department, Hernando Municipal Court, Alexander Moore, Christian Subia, Thomas Vaughn, Timothy Algee, Justin Hoffman, Shane Ellis, Scott Smith, Mayor Chip Johnson, Cassandra Perry, Paige Williams, Beth R. Ross, and Chad Wicker ("Defendants"), Motion for Judgment on the Pleadings [26]. *Pro se* Plaintiff Shannon Casey Sargent ("Mr. Sargent") has not responded to the motion and his time to do so has passed. The Court has reviewed the record, along with relevant case law and evidence, and is now prepared to rule.

## RELEVANT BACKGROUND

On April 12, 2024, at 1:25 AM, Officers Alexander Moore and Christian Subia stopped Mr. Sargent in his vehicle on Interstate 55. Officer Moore told Mr. Sargent the stop was due to a crack in his windshield. Officer Moore requested Mr. Sargent's driver's license, but he refused and requested to speak with the officers' supervisor. Mr. Sargent allegedly recorded the incident, but no recording has been provided to the Court.

Officer Thomas Vaughn, the requested supervisor, subsequently arrived at the scene. Officer Vaughn warned Mr. Sargent that he would be arrested if he did not exit the vehicle and provide identification. In response, Mr. Sargent told him "you work for me," while allegedly attempting to exit his vehicle. Officer Vaughn then broke Mr. Sargent's passenger side window

1

pointed a taser at his face and loudly ordered him to exit the vehicle. Meanwhile, Officer Subia broke the driver side window.

The officers handcuffed Mr. Sargent and Officer Vaughn searched him. The officers then discovered Mr. Sargent did not own a legal driver's license. He does not believe it to be required to drive an automobile. The officers placed Mr. Sargent in the DeSoto County jail for approximately 14 hours until he appeared before a magistrate judge on charges of resisting arrest, disorderly conduct, failure to obey a lawful order, improper display and following too closely. Mr. Sargent's vehicle was impounded and he was released.

Mr. Sargent later filed a Freedom of Information Act request for copies of the officers' oaths of office and bonds. Mr. Sargent believes that the officers had no active oaths or bonds during his arrest because the oaths of office were allegedly dated in May, a month after his arrest, and allegedly no bonds were provided. Mr. Sargent also visited the Chief of Police, Shane Ellis, to show him his recording of the incident. Chief Ellis informed Mr. Sargent that he could not file charges against the officers. This meeting prompted Mr. Sargent to file another Freedom of Information Act request for Chief Ellis' oath and bond.

Mr. Sargent also attempted to contact Mayor Chip Johnson with his concerns but was blocked from doing so by Scott Smith, the Mayor's executive assistant. Mr. Sargent then filed a demand for dismissal in his criminal case, which he claims was filed but never acknowledged by prosecutor Paige Williams. Mr. Sargent also filed a motion for an evidentiary hearing with the clerk of court Cassandra Perry, who informed him that his court date would occur in four months, which Mr. Sargent claims violated his right to a speedy trial.

After obtaining his requested documents from City Hall, Mr. Sargent was again pulled over, in what he believes was a retaliatory stop, by Officer Justin Hoffman. Mr. Sargent exited his

vehicle, and Officer Hoffman arrested him for driving without a seatbelt and driving without a driver's license. Mr. Sargent was released on his own recognizance and his car was towed.

On November 19, 2024, Mr. Sargent filed this 42 U.S.C. § 1983 action against Defendants. The Court gleans the following claims: Mr. Sargent is suing Defendants for their involvement in the policies put in place to "tax the People through the use of [f]orce;" their deprivation of his rights; malicious prosecution; impersonating officers; violating their oaths of office; and unlawfully operating as a for-profit corporation by conspiring to violate the rights of the people.

On March 26, 2025, Mr. Sargent was found guilty of failure to exhibit a driver's license, improper display of equipment, following too close, a seatbelt violation, two separate counts of driving with a suspended driver's license, and disorderly conduct for failure to obey an officer.

## STANDARD OF REVIEW

A motion for judgment on the pleadings serves a similar function to a Rule 12(b)(6) motion to dismiss. "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that remain. *Voest–Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998). Moreover, in ruling on a motion for judgment on the pleadings, "the district court is confined to the pleadings and must accept all allegations contained therein as true." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content

3

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It is not necessary that a complaint contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must liberally construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true. *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005).

It is the duty of the trial judge to hold *pro se* complaints to less stringent standards than proper pleadings drafted by lawyers. *Hepperle v. Johnston*, 544 F.2d 201, 202 (5th Cir. 1976). The Fifth Circuit has held that "[g]enerally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). However, "[t]he district court may dismiss an action on its own motion under Rule 12(b)(6) 'as long as the procedure employed is fair.'" *Id.* In *Bazrowx*, the Fifth Circuit found that "the district court erred in failing to give Appellant notice of the court's intention to dismiss his suit or an opportunity to amend his complaint[,]" but held that "[s]uch error may be ameliorated ... if the plaintiff has alleged his best case, or if the dismissal was without prejudice." *Id.* (footnote omitted). The Fifth Circuit has clarified that a court can consider a plaintiff to have asserted his best case when the plaintiff has had a "fair opportunity to make out [his] case." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986).

## ANALYSIS

Mr. Sargent brings § 1983 claims against 15 defendants. To streamline the analysis, the Court will group Defendants by their raised applicable defenses to determine if Mr. Sargent's claims are sufficient. The analysis will evaluate the claims as to improperly joined parties; the

presence of prosecutorial immunity; the availability of qualified immunity; and whether the claims survive against a municipality.

I.  **Improper Parties**

A basis for dismissal of the claims against the Hernando Police Department is that a police department is not a proper defendant. The capacity of an entity to be sued is governed by state law. Fed. R. Civ. P. 17(b)(3). The Mississippi Code authorizes suit against "[e]very municipality of this state." Miss. Code Ann. § 21-17-1(1). The Mississippi Supreme Court has held that it does not authorize a separate suit against a municipality's police department. *See e.g.*, *Brown v. Thompson*, 927 So.2d 733, 737 (Miss. 2006) (holding that a sheriff's department does not enjoy a separate legal existence apart from the county in which it operates and is therefore not subject to suit). Mr. Sargent's claims against the Hernando Police Department fail because Mississippi law does not authorize suits against police departments.

Similarly, the claims against the Hernando Municipal Court must be dismissed because a municipal court is not a legally cognizable entity to be sued. "In order for a plaintiff to sue a city department, it must enjoy a separate legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (internal citations omitted). "Unless the political entity that created the department has taken 'explicit steps to grant the servient agency with jural authority,' the department lacks the capacity to sue or to be sued*." Crull v. City of New Braunfels, Texas*, 267 F. App'x 338, 341 (5th Cir. 2008) (citing *Darby*, 939 F.2d at 313). Defendants assert that the Hernando Municipal Court is merely a department of the City of Hernando and is not an independent entity to be sued, and Mr. Sargent has not claimed or established otherwise. Therefore, Mr. Sargent's claims are not authorized against the Hernando Municipal Court.

## II. Prosecutorial Immunity

Mr. Sargent's claims, raised under 42 U.S.C. § 1983, against Paige Williams, the Hernando Municipal Court Prosecutor, are based on her denial to bring his requested motions to the judge in his criminal case, which Mr. Sargent classifies as "Maliciously Prosecuting my Person." In response, Ms. Williams raises the defense of prosecutorial immunity. The Supreme Court of the United States extended absolute immunity for § 1983 claims to state prosecutors in *Imbler v. Pachtman*, 424 U.S. 409 (1976). The Supreme Court ultimately concluded that "state prosecutors are absolutely immune from § 1983 damages claims based on activities 'intimately associated with the judicial phase of the criminal process." *Id.* at 430.

This immunity goes so far as to include the decision to file or not file criminal charges, and when to file them. *Quinn v. Roach*, 326 F. App'x. 280, 292 (5th Cir. 2009). Mr. Sargent's complaint finds issue with Ms. Williams' decision not to act on his requests to the Court, and that she refused to dismiss the criminal case against him. None of Mr. Sargent's allegations against Ms. Williams would affect her immunity protections. A prosecutor's decision to file criminal charges is squarely within activities "intimately associated with the judicial phase of the criminal process." *See Imbler*, 424 U.S. at 30. None of Mr. Sargent's allegations indicate that Ms. Williams acted outside of the scope of the prosecutorial immunity standard. As such, Ms. Williams' decision to prosecute Mr. Sargent despite his requests entitle her to prosecutorial immunity, and all claims against her must be dismissed.

## III. Qualified Immunity

Mr. Sargent asserts that his first, fourth, fifth, sixth, eighth, ninth, and thirteenth amendment rights have been violated by the collective actions of Defendants. Mr. Sargent sues Defendants under 42 U.S.C. § 1983 for their actions related to his two arrests, his prosecution, his conviction,

6

the destruction of his car windows, alleged interference with his Freedom of Information Act requests, and an alleged conspiracy to deprive his rights. Defendants Alexander Moore, Christian Subia, Thomas Vaughn, Timothy Algee, Justin Hoffman, Shane Ellis, Scott Smith, Mayor Chip Johnson, Cassandra Perry, Beth R. Ross, and Chad Wicker raised a qualified immunity defense to the causes of action Mr. Sargent asserted, and if sufficient, this will prohibit Mr. Sargent's claims against them.

42 U.S.C. § 1983 allows individuals to seek redress when someone acting under the authority of state law "subjects" them to a deprivation of rights or "causes" them "to be subjected" to a deprivation of rights. Generally, a plaintiff asserting a claim under 42 U.S.C. § 1983 must (1) allege the deprivation of a right secured by the Constitution or federal law and (2) demonstrate that the alleged violation was committed by a person acting under color of state law. *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

Qualified immunity is a judicially created legal doctrine which "shields federal and state officials from money damages." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant "pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion," the burden shifts to the plaintiff to "rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997). "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir.2001)). The plaintiff, not the defendant, must do the majority of the work in the qualified immunity context. In this case, Mr. Sargent's failure to

7

respond to the motion can not be said to sufficiently meet the burden of negating the qualified immunity defense.

To rebut a qualified immunity defense, "the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008). The Supreme Court has instructed that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft*, 563 U.S. at 735.

Regarding the clearly-established-right prong, "[a] right is 'clearly established' if it is 'one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "Unless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity." *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)). This standard to rebut a qualified immunity defense is a high bar to reach for plaintiffs who actually respond, and a non-responding plaintiff will not likely be able to rebut the defense.

Defendants assert that they are entitled to qualified immunity because they were acting within the scope of their authority. This shifts the burden to Mr. Sargent to show that binding precedent supports the existence of a clearly established right that has been violated. Mr. Sargent's claims are that Defendants violated his constitutional rights during his arrests and other interactions with Defendants, but, outside of broad assertions in his complaint, he cites no case law explaining how a violation of his constitutional rights occurred. Mr. Sargent's failure to respond to the qualified immunity motion and the lack of cited precedent on his part do nothing to refute the

8

Defendants' qualified immunity motion. Suffice it to say, Mr. Sargent has failed to show the existence of a clearly established right as required.

For the "clearly established law" prong, Defendants argue that Mr. Sargent asserts no facts or case law that would negate the qualified immunity defense raised by any of the Defendants. The Court finds that Defendants make a good faith assertion of a qualified immunity defense, and that the burden to rebut has shifted to Mr. Sargent. His failure to respond to the motion for judgment on the pleadings is an insufficient rebuttal to the qualified immunity defense. The claims against Defendants Alexander Moore, Christian Subia, Thomas Vaughn, Timothy Algee, Justin Hoffman, Shane Ellis, Scott Smith, Mayor Chip Johnson, Cassandra Perry, Beth R. Ross, and Chad Wicker must be dismissed.

## IV. Municipality Liability

Mr. Sargent is suing the City of Hernando for multiple claims alleged under 42 U.S.C. § 1983. All claims raised against other named defendants in their official capacities are treated by this Court as being asserted against the City of Hernando. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009) ("[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Serv. Of New York*, 436 U.S. 658, 690 n. 55 (1978)). Defendants' motion is unopposed by Mr. Sargent, so the Court assumes Mr. Sargent alleged his best case and will analyze his claims accordingly.

In actions against municipalities, the 42 U.S.C. § 1983 standard differs. A municipality may only be held liable under § 1983 if "the governmental body itself subjects [that] person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted) (quoting *Monell*, 436 U.S. at 692).

9

Because such entities are only responsible for their own illegal acts, they cannot be vicariously liable for their employees' actions. *Connick*, 563 U.S. at 60; *Monell*, 436 U.S. at 698. To establish constitutional liability under *Monell*, a plaintiff must allege that (1) a constitutional violation occurred, and (2) an official policy or custom was the "moving force" behind the violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 579-80 (5th Cir. 2001); *Monell*, 436 U.S. at 694.

Mr. Sargent contends that the City of Hernando deprived him of his first, fourth, fifth, sixth, eighth, ninth, and thirteenth amendment rights. His claims are based on assertions of false arrest, false imprisonment, criminal impersonation, destruction of private property, malicious prosecution, and conspiracy for deprivation of rights, particularly his right to travel. [W]ithout a predicate constitutional violation, there can be no *Monell* liability. *Loftin v. City of Prentiss, Mississippi*, 33 F.4th 774, 783 (5th Cir. 2022). As discussed above, Mr. Sargent has not adequately demonstrated that a constitutional violation occurred as he only labels and makes conclusions of alleged violations. Without showing a constitutional violation, the City of Hernando is not liable under the first prong of *Monell*.

A municipality may be held liable under § 1983 if the deprivation of a constitutional right was due to an official policy or custom. *Piotrowski*, 237 F.3d at 579. The relevant policy or custom need not be pled in exhaustive detail, but there must be enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2006). Official policy is "ordinarily contained in duly promulgated policy statements, ordinances or regulations" but may also be established by custom. *Piotrowski*, 237 F.3d at 579.

Even assuming Mr. Sargent's allegations of constitutional violations are true, he still failed to assert that an official policy or custom of the City of Hernando caused the violations as required.

Mr. Sargent contends that the City of Hernando put into place policies to "tax the People through the use of [f]orce, implementing the Police Department as their collection arm." He fails to point to any written or official promulgated policies or any widespread practices by the City of Hernando outside of his claims that a policy to tax was used and that Defendants conspired against him. Mr. Sargent has failed to plead sufficient facts to raise a reasonable expectation discovery will reveal evidence supporting his claims, and he has not explained how the alleged policy was the moving force behind the actions of the City of Hernando or its agents. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2006). Without even a simple showing of the policy's existence, under *Monell*, Mr. Sargent's § 1983 claims against the City of Hernando fail. As a result, all federal claims raised against Defendants must be dismissed.

Turning to Mr. Sargent's state law claims, in cases such as this one, where all federal claims are dismissed prior to trial, 28 U.S.C. § 1367(c)(3) grants this court discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. In the Fifth Circuit, the "general rule" is that courts should "decline supplemental jurisdiction [over state law claims] when all federal claims are dismissed or otherwise eliminated from a case." *Certain Underwriters at Lloyd's v. Warrantech Corp.*, 461 F.3d 568, 578 (5th Cir. 2006). In concluding that it should follow the general rule in this case, this court notes that § 1367(c) provides that:

> The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

11

Importantly, the four § 1367(c) factors are listed in the disjunctive, which means that only one of them needs to be met in order to grant a district court discretion to decline to exercise supplemental jurisdiction.

The Court will note that Mr. Sargent's state law claims are not clearly distinct from his federal claims outside of a brief mention in his complaint [1] that sections of the Mississippi State Constitution were violated. Since the underlying federal claims are being dismissed, the Court will decline to exercise supplemental jurisdiction over Mr. Sargent's state law claims.

## CONCLUSION

**ACCORDINGLY**, Defendants' Motion for Judgment on the Pleadings [26] is **GRANTED**. Mr. Sargent's federal claims are **DISMISSED WITH PREJUDICE**, and Mr. Sargent's state law claims are **DISMISSED WITHOUT PREJUDICE**.

A separate judgment in accordance with this order will be entered on this date.

**SO ORDERED** this 22nd day of October, 2025.

                                           /s/Michael P. Mills
                                           UNITED STATES DISTRICT JUDGE
                                           NORTHERN DISTRICT OF MISSISSIPPI